**In re the Marriage of Kurtis D. BEAR, Petitioner, Appellant,**

v.

**Kathy D. BEAR, Respondent.**

**No. C4–87–1269.**

Court of Appeals of Minnesota.

Nov. 24, 1987.

Kathleen M. Picotte–Newman, Larkin, Hoffman, Daly & Lindgren, Minneapolis, for appellant.

Edward H. Galbraith, Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Kurtis D. Bear appeals from the determination of the trial court that respondent Kathy D. Bear is the primary parent of the minor child of the parties, from the trial court's grant of physical custody to respondent and from the visitation schedule it set for appellant and the minor child. We affirm.

## FACTS

The parties' only child was born October 11, 1982. The marriage was dissolved on April 1, 1987.

After the minor child's birth, respondent did not work outside the home for six months, at which time she commenced working two nights a week. When the minor child was a year old, respondent started working full time and the minor child was placed in day care. During this entire period, appellant worked full time and was away on business approximately seven nights each month.

The parties experienced marital difficulties in late 1983 and sought counseling. They were unable to resolve their differences and separated for six months beginning in February 1984. In April 1984, appellant filed for marital dissolution. That action was later dismissed.

During the six month separation, respondent cared for the minor child during the week. Appellant, because of employment related traveling, had the minor child in his custody on weekends and occasionally on week nights. The parties attempted a reconciliation in September of 1984, at which time appellant took a new job which did not require travel. The parties' reconciliation attempt failed after a few days and respondent spent the remainder of September with a friend, leaving the minor child with appellant. Respondent moved with the child into her parents' home in October 1984.

Between October 1984 and January 1986, the minor child spent alternate weeks with each parent. In April 1985, appellant filed the second petition for dissolution. During pendency of the dissolution proceedings, four custody evaluations were conducted: by Dr. David Morris at the request of appellant in June 1985; by Washington County Court Services at the request of the trial judge in July 1985; by Dr. Jane McNaught at the request of appellant between March and August 1986; and by Karen Irwin at the request of respondent in September 1986.

All evaluators except Ms. Irwin testified at the dissolution hearing. Dr. Morris, who had seen only appellant and the minor child, made no recommendations as to physical custody. The Washington County Court Services evaluator recommended, first, that the parties cooperate in "reaching a workable custody compromise" and, second, that the parties be granted joint legal and physical custody. Dr. McNaught recommended joint legal custody with physical custody in appellant. Ms. Irwin, in her written report, had recommended joint legal custody with physical custody alternating every week. In addition to the other evaluators, testimony was received from Helen Sawyer, who had provided marriage counseling to the parties in 1983. She recommended full custody to appellant.

In January 1986, the trial court issued an order granting temporary physical custody to respondent and establishing weekend and weekday visitation for appellant and the minor child. Appellant was required to give 24 hours notice to respondent of proposed weekday visitation which was limited to one visit a week for three weeks and two visits every fourth week.

Upon dissolution of the marriage, the trial court granted joint legal custody of the minor child to the parties and granted respondent primary physical custody. In a memorandum attached to its findings of fact and conclusions of law, the trial court set forth a commendably thorough analysis of the section 518.17, subd. 1 factors and the factors set forth in *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985). The trial court's section 518.17, subd. 1 analysis resulted in the determination that "both parents are acceptable custodians for [the minor child]." The trial court's analysis of

the *Pikula* factors resulted in a determination that "respondent was [the minor child's] 'primary parent' between his birth * * * and the parties' separation * * *."

In its memorandum the trial court also discussed the recommendations of the expert witnesses. It "relied very little on Ms. Sawyer's analysis" because of her perceived role as appellant's marriage counselor, lack of record keeping, and limited time and opportunity to observe all members of the family. The trial court discounted Dr. McNaught's evaluation of respondent due to irregularities in the testing process of respondent and unreasonable expectations placed by Dr. McNaught on respondent. Because Dr. Morris had not seen respondent, the trial court found his testimony to be of "little assistance to the Court in analyzing the 'primary parent' or the 'best interest of the child' issue."

Appellant moved for amended findings of fact and conclusions of law or a new trial. After submission of supplemental memoranda, appellant's motion was denied.

Appellant initially argued on appeal that the trial judge erred in making the primary parent determination as of February 1984. At oral argument, however, appellant agreed that February 1984 was the correct moment in time to make the determination as to which party was the primary parent. However, appellant continues to challenge the trial court's decision that respondent is, in fact, the primary parent. Appellant also challenges the visitation schedule established by the trial court.

### ISSUES

1. Did the trial court err in determining that respondent was the primary parent of the parties' child?

2. Was the award of limited visitation between the appellant and the minor child an abuse of discretion?

### ANALYSIS

A custody determination involves an exercise of the trial court's discretion. That determination will not be disturbed on appeal absent an abuse of discretion. *Pikula*, 374 N.W.2d at 710.

### I.

Appellant maintains that the trial court abused its discretion by determining that respondent was the primary parent of the minor child and in granting her primary physical custody. The best interests of the minor child must always be the guiding principle in custody determinations. *See* Minn.Stat. § 518.17, subd. 3 (1984).

When both parties are fit parents and both seek custody of a child too young to express a parental preference, the court must consider the factors in section 518.17, subd. 1 together with the factors laid down by the supreme court in *Pikula*. In determining which parent is the primary parent under *Pikula*, the trial court must decide which party was "primarily responsible" for the following parental duties:

1. Preparing and planning of meals;
2. Bathing, grooming and dressing;
3. Purchasing, cleaning and care of clothes;
4. Medical care, including nursing and trips to physicians;
5. Arranging for social interaction among peers after school, i.e., transporting to friends' houses, or, for example, to girl or boy scout meetings;
6. Arranging alternative care, i.e., babysitting, day-care, etc.;
7. Putting child to bed at night, attending to child in the middle of the night, waking child in the morning;
8. Disciplining, i.e., teaching general manners and toilet training;
9. Educating, i.e., religious, cultural, social, etc.; and
10. Teaching elementary skills, i.e., reading, writing and arithmetic.

*Pikula*, 374 N.W.2d at 713. Applying the *Pikula* analysis, the trial court here found respondent was the primary parent between the birth of the minor child and the parties' separation in February 1984.

As both parties recognize, the trial court correctly determined that the parties' sepa-

ration in February 1984 was the appropriate date to look to in deciding which of the parties was the primary parent. Therefore, because much of appellant's argument regarding parenting emphasizes conduct occurring after the parties' separation, it is irrelevant to the primary parent determination. *Pikula,* 374 N.W.2d at 714.

Because of the minor child's age, the trial court properly discounted the importance of the *Pikula* factors concerning social interaction and discipline. Appellant does not dispute the trial court findings regarding education of the minor child. However, appellant disagrees with the findings on the remaining criteria:

*Planning and preparation of meals:* Both parties testified they were responsible for this aspect of the minor child's care. In weighing this conflicting testimony, the trial court found respondent to be the parent primarily responsible. We note further that certain testimony presented by appellant described alleged feeding practices engaged in my respondent after the parties' separation. The trial court's finding on this factor was supported by the record.

· *Bathing, grooming and dressing:* Both parties testified they were primarily responsible for these duties. Respondent was found to be primarily responsible with some help from appellant. The evidence adequately supports this conclusion.

*Purchasing, cleaning and care of clothes:* Appellant contends that the evidence does not support the finding that respondent was primarily responsible for the minor child's clothes. However, the trial court noted that the parties presented "very little evidence on this factor" but determined respondent to be primarily responsible. We find no error on the part of the trial court.

*Medical care:* The trial court found respondent primarily responsible for the minor child's medical care. Appellant's argument that he was present during surgical procedures on the minor child's ears, without more, does not preclude the trial court from finding that respondent was primarily responsible for the minor child's medical care.

*Arranging alternative care:* Mrs. Rossman provided day care for the minor child prior to and during February 1984. The trial court found that appellant did not participate in arranging day care. Appellant and Mrs. Rossman each agree that appellant interviewed her prior to her appointment.

*Putting the minor child to bed:* Both parties claimed responsibility for this activity and for waking the minor child in the morning. The trial court had an opportunity to observe the parties and its finding that respondent's testimony was more believable cannot be disturbed.

Finally, appellant demands a reevaluation of expert witness testimony and reports. Custody evaluations by experts "may be disregarded when outweighed by other evidence." *Pikula,* 374 N.W.2d at 712. The trial court gave adequate reasons regarding its decision as to the weight and credibility to give to each of the expert's testimony and recommendations. Those decisions are supported by the record.

The trial court's compliance with Minn. Stat. § 518.17, subds. 1 and 3 is well documented. In addition, its *Pikula* analysis is fundamentally sound. There is a sufficient statutory and case law foundation for the granting of physical custody to respondent, and the trial court did not err in doing so.

## II.

Appellant next claims the trial court abused its discretion in ordering the following visitation schedule:

  a.  every other weekend;
  b.  one night each week between 5:00 p.m. and 8:00 p.m.;
  c.  alternating holidays:
    Thanksgiving
    Christmas Eve
    Christmas Day
    New Year's Eve
    Easter
    Fourth of July
    Memorial Day
    Labor Day

Respondent has Mother's Day and appellant has Father's Day

d. alternating the child's birthday;

e. Appellant, after providing one month notice to respondent is allowed to have [the minor child] up to one month each summer and up to one week during each of spring and Christmas breaks from school;

f. the schedule is alterable if the parties are mutually agreeable to said alteration.

The trial court shall grant a non-custodial parent such rights of visitation as will enable the child and non-custodial parent to maintain a child to parent relationship that will be in the best interests of the child. Minn.Stat. § 518.175, subd. 1. Child-parent visitation is a right essential to the continuance and maintenance of a relationship between the child and the non-custodial parent. *Griffin v. VanGriffin,* 267 N.W.2d 733, 735 (Minn.1978). However, we must recognize that the trial court has broad discretion to determine how to serve the best interests of the child in the area of visitation. *Rutten v. Rutten,* 347 N.W.2d 47, 51 (Minn.1984). The extent of this discretion is illustrated in *Rutten,* where the father was denied all overnight visitation with his children. The supreme court said:

Any parent knows that bedtime is a most precious part of childhood and parenting. We cannot say, however, the visitation ordered [in this case] amounted to an abuse of discretion.

*Rutten* at 51.

This court is concerned that the trial court's visitation schedule appears to allow the minor child less time with his father than was permitted either under the parties' own custody arrangement or under the order for temporary relief. From October 1984 to January 1986, the parties alternated physical custody of the minor child each week. From January 1986 until the dissolution of the parties' marriage in April 1987, appellant and the minor child visited each weekend and on five additional days each month.

Visitation under the decree is every other weekend and one weekday evening. De-

spite our concern, we do recognize the reasonable desire on the part of a working custodial parent, such as respondent here, to spend some free weekend time with the minor child. Visitation every weekend with the non-custodial parent would preclude this shared time. In addition, two provisions of the visitation schedule serve to at least partially answer our concern about restricted visitation. First, appellant and the minor child will visit for one full month and two additional full weeks each year. Second, and more important, we believe, is section "f" of the visitation schedule wherein the parties are reminded that the schedule is alterable if the parties are mutually agreeable to said alteration. We expect that the parties, in seeking to serve the best interests of their son, will give effect to this provision in such a way that the non-custodial parent-child relationship is strengthened and nourished, thus minimizing for the minor child the adverse consequences of his parents' marriage dissolution.

The visitation schedule established by the trial court was within its broad discretion and is affirmed.

## DECISION

The trial court did not abuse its discretion in determining that respondent was the primary parent of the parties' minor child and granting her primary physical custody or in its grant of visitation to appellant.

Affirmed.