In Re the Marriage of **Barbara B. ERICKSON, Petitioner,**
**Respondent,**

v.

**Stephen B. ERICKSON, Appellant.**

No. CX–88–1478.

Supreme Court of Minnesota.

Dec. 22, 1989.

---

L.D. Downing, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for appellant.

Mary Alice C. Richardson, Richardson Law Office, Rochester, for respondent.

KELLEY, Justice.

In denying appellant Stephen B. Erickson's motion seeking modification of the original decree which dissolved his marriage to respondent Barbara B. Erickson on the grounds of substantial change in circumstances, the trial court declined to consider an alleged change in tax obligations as justification for modification; characterized as child support obligations those which had been designated in the original decree as maintenance; and rejected appellant's assertion that respondent's remarriage and increased income warranted modification.[1] The court of appeals sustained

---

1. Other issues were before the trial court. Both parties appealed from the trial court's order. This appeal was the second to the court of appeals. For a history of the litigation concerning these past dissolution proceedings, *see Erickson v. Erickson*, 435 N.W.2d 145 (Minn.App. 1989), *pet. for rev. granted* (Minn., Apr. 26, 1989). Not all of the issues ruled on by the trial

those rulings. We affirm in part, but reverse in part, and remand for further proceedings.

On August 14, 1984, a judgment and decree dissolving the marriage of the parties was entered in Olmsted County. Paragraphs 3 and 4 of that judgment and decree, which are here in issue, were taken verbatim from a "Marriage Termination Agreement" (Agreement) entered into by the parties after consultation with an accountant. The decree provided that appellant, who was then and still is a Mayo Clinic physician, would pay child support for the four minor children of the parties, and also would pay to the respondent maintenance.[2]

Both parties intended that the Marriage Termination Agreement maximize the money available for the children while minimizing the income tax liability to the family unit. Accordingly, the Agreement was structured to provide that appellant, in addition to paying for medical care and contributing to a college fund, pay $1,000 per child annually as child support until the child reached the age of 18 or graduated from high school. The minimum amount appellant could pay for child support and still claim the children as deductions for state and federal income tax purposes was $1,000 per child. The Agreement also obligated appellant to pay to respondent maintenance computed by taking 55 percent of his gross income, less the amount otherwise designated therein as child support. On January 1, 1988, that percentage for maintenance would be reduced to 40 percent, and thereafter would continue until the oldest child graduated from high school. At that time, the Agreement contemplated that the maintenance be reduced by 5 percent as each child graduated from high school, and an additional 5 percent when each child reached 22 years of age or graduated from college. Thus, under the plan, all maintenance would end when the youngest child reached 22 years of age.

At the time of the dissolution, respondent Barbara Erickson had a Bachelor's degree in Elementary Education and a Master's degree in Special Education. However, at that time she was not employed outside the home. Fifteen percent of the 55 percent of gross income which had been allocated to maintenance until January 1, 1988, was in contemplation that respondent would further her education and change careers. It appears clear from

court below, and affirmed on appeal to the court of appeals, remain for our consideration. Those unappealed issues concern respondent's change of residency, modification of visitation, trial court rulings relative to alleged shortages and overpayments, and the trial court's consideration of respondent's claim respecting her necessary living expenses.

**2.** Paragraph 3 of the 1984 decree generally sets forth those obligations of the appellant which in the Agreement the parties had designated as child support:

> 3. That the Respondent shall pay to the Petitioner as child support the sum of One Thousand ($1,000.00) Dollars per year per child. Child support shall be payable in monthly installments on the 1st day of each month, commencing on April 1, 1984. Child support payments shall be modified by reducing said $1,000.00 per year child support payment as each child graduates from high school or reaches the age of 18 years, whichever event occurs later.
>
> \*　\*　\*　\*　\*　\*

Paragraph 4 related the payment obligation of appellant which the parties had agreed would be called maintenance:

> 4. That the Respondent shall pay to the Petitioner, as maintenance, the sum of fifty-five percent (55%) of Respondent's gross income, but the amount of child support being paid shall always be a credit against the maintenance payment due, no matter what the amount of maintenance is under the terms of this paragraph, and the maintenance shall be payable in monthly installments on the first day of each month commencing April 1, 1984, and continuing until January 1, 1988, when the maintenance shall be reduced to forty percent (40%) of Respondent's gross income and shall continue at that percent until the oldest of the parties' minor children graduates from high school. That upon the occurrence of each of the following events, the maintenance shall be reduced by 5%: (a) each child's graduation from high school, (b) each child's reaching the age of 22 years or graduating from college, whichever event occurs first. It is further agreed and understood that the percentage of Respondent's salary shall be determined on July 1st of each year commencing in 1984 and that the adjustment in maintenance shall be reflected in the August 1st maintenance payment of each year.
>
> \*　\*　\*　\*　\*　\*

the Marriage Termination Agreement itself, as well as from other evidence in the record, that the parties intended to structure appellant's payment obligations to take maximum advantage of the tax laws as they existed in 1984. The amounts therein designated as child support under paragraph 3 permitted appellant to claim the four children as dependents on his tax returns. The 15 percent of gross income that was part of maintenance in paragraph 4 was, in reality, rehabilitation,[3] as the word is understood in family law. The remaining 40 percent, because it was designated as maintenance, was excluded from the top of appellant's gross income for tax purposes, but included in respondent's gross income for tax purposes; and, therefore, taxed at a much lower rate.[4] Nonetheless, the whole scheme contemplated that ultimately each child during minority would receive as support ten percent of appellant's net income, after making allowances for tax consequences and other payments of a child support nature. But, less than four years after the plan was designed and incorporated into the judgment and decree, the premises upon which it was based changed, at least in two respects: the first resulted from change in the tax law which substantially negated any tax advantages of shifting income tax liability from appellant to respondent; the second was occasioned by respondent's success in establishing a career as a realtor and her remarriage.

We turn first to examine appellant's contention that respondent's remarriage, which under Minn.Stat. § 518.64, subd. 3 (1988)[5] terminates maintenance, constitutes such a substantial change in circumstances as to warrant a modification of the dissolution decree under Minn.Stat. § 518.64(2) (1988) (the statute permitting modification of terms of a decree relating to maintenance and support, and mandatory conditions to be met in making modifications) by application of the child support guidelines set out in Minn.Stat. § 518.551, subd. 5(a) (1988). Under appellant's present proposal, the approximately 40 percent of his gross income he now is paying under paragraph four would end. It is only by amending the original decree along these lines, appellant here argues, that the decree will correctly reflect in 1989 the true intent the parties entertained when structuring the Marriage Termination Agreement in 1984.

Even though a literal application of Minn.Stat. § 518.64, subd. 2, would relieve appellant from the obligation to pay respondent maintenance after her remar-

---

3. As it happened, following a relatively short training period, respondent obtained a real estate license, and thereafter followed a career in that field that was increasingly remunerative up until the time she remarried and moved from Rochester to Lincoln, Nebraska.

4. Under section 71 of the Internal Revenue Code, money paid to an ex-spouse as alimony or maintenance is included in the income of the receiving spouse, but excluded from the income of the paying spouse. Child support, on the other hand, is nontaxable to the receiving parent, but is included in the gross income of the paying parent. In 1984, for tax purposes it was permissible in a decree to label payments spousal maintenance although, in fact, the payments were intended to be child support. See Comm'r v. Lester, 366 U.S. 299, 304, 81 S.Ct. 1343, 1346, 6 L.Ed.2d 306 (1960). The only tax requirement was that the decree expressly specify a set amount as child support before it could be excluded from the recipient parent's income. Id. at 302, 81 S.Ct. at 1345; Graham v. Comm'r, 79 T.C. 415, 419 (1982). Thus, in 1984, the actual intent or purpose that the parties sought to accomplish was deemed to be irrelevant for tax purposes; the amount denominated in a pre-dissolution agreement or in the decree itself as child support was not considered income to the recipient, but the remainder was considered maintenance notwithstanding any inter se understanding of the parties. Section 71 of the Internal Revenue Code was amended by the Tax Reform Act of 1984, Pub.L. No. 98–369, § 422, 98 Stat. 494, 795 (1984). However, the amendment affected only those decrees entered or modified after December 31, 1984. Even then, the amendment would not apply to a subsequent modification of a prior decree unless the modification itself expressly stated that the post–1984 law was to apply. Id. § 422(e)(1), (e)(2), 98 Stat. 494, 798.

5. Minn.Stat. § 518.64, subd. 3 (1988), provides: "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." This portion of section 518.64 is identical to the 1984 statute.

riage, appellant does acknowledge that a substantial portion of what was then specified as "maintenance" in the original decree, was, in fact, intended by the parties to be support for the children during their minority. However, he asserts, not all of that percentage of the payment was so intended to be for child support, and, in fact, some of it was intended to be for "maintenance" as that word is used throughout Minn.Stat. ch. 518. Therefore, he reasons that because by statute the respondent's remarriage terminates his "true" maintenance obligations, the original decree should be modified to substitute child support obligations determined pursuant to the Minn.Stat. § 518.551, subd. 5(a) guidelines.

The trial court rejected appellant's contention. It concluded that although the payments from appellant to respondent under paragraph 4 of the original decree were characterized as maintenance, in actuality the full amount of the payments made on or after January 1, 1988 was intended by both parties to be child support for the minor children. That conclusion finds ample support in the evidence. The evidence clearly establishes that, after appropriate adjustments for the *inter se* allocation of income tax liabilities, the parties contemplated in August 1984 that approximately 10 percent of appellant's annual *net* income would be available to respondent for support of each of the four children during minority. That conclusion gains additional support from an examination of the structure of the payments after a child attains majority. Thereafter, payments to the child of five percent of appellant's net income obviously were designed to support the affected child during the period normally used for career training and education. Further support is found in the fact that all payments for "maintenance" ended when all children reached 22 years of age or graduated from college. Nothing in the Agreement, or other evidence, supports ap-

pellant's assertion that part of the "maintenance" payments were intended, in reality, to be true maintenance. Were the courts to adopt the modification of the original decree as appellant now urges, his August 1984 intended and agreed upon support obligations would be substantially reduced, as would the amount of appellant's net income available for the support of each minor child.[6]

However, in its denial of appellant's modification motion, the trial court not only declined to alter the maintenance provision, but also failed to terminate it. It apparently looked beyond the literal designation the parties had used in 1984 to delineate appellant's payment obligations in order to effectuate the result they had obviously intended. Thus, in paragraph 2 of its order for amended judgment, the trial court wrote "[Appellant's] motion to modify *child support* is denied. [Appellant] shall continue to pay *child support* as set forth in paragraphs 3 and 4 of the conclusions of law of the original judgment and decree." (Emphasis supplied). To us this statement reflects the trial court's understanding that the intent of the parties in 1984 was to provide equitable child support, but to structure payments so as to minimize overall tax liabilities. Adequate evidence supports that conclusion precluding reversal on that ground. *See, e.g., Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986); *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn. 1984).

■ Appellant argues, however, that evidence upon which the trial court relied was based substantially on inadmissible testimony. His argument focuses primarily on two trial court rulings: the first, that over his objection the trial court permitted respondent to testify as to her understanding of this aspect of the Agreement, and, the second, that the trial court erred in admitting a February 21, 1988 letter from him addressed to the respondent, which, he claims, was a letter of settlement, and,

---

**6.** For example, the Agreement incorporated into paragraph 4 of the original decree was designed to provide to each child approximately 10 percent of appellant's net income during the child's minority. Were appellant's child support obli-

gations determined by following the guidelines of Minn.Stat. § 518.551(5)(a), the approximate net amount per child during minority would be less than 6 percent of appellant's net income, assuming a $130,000 gross income.

therefore, inadmissible under Rule 408 Minn.R.Evid.

Parole testimony may be admissible if a decree is ambiguous. A decree is unambiguous if its meaning may be determined without any guide other than knowledge of the facts on which the language depends for meaning. *Starr v. Starr*, 312 Minn. 561, 563, 251 N.W.2d 341, 342 (1977). Disagreement between the parties as to the interpretation of a dissolution decree may be tantamount to a finding of ambiguity. *See, e.g., Webb v. Webb*, 360 N.W.2d 647, 649 (Minn.App.1985). Parole evidence is then admissible relative to the ambiguity. *Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). The comparatively minuscule amount of appellant's income allocated to child support by the Agreement, given appellant's gross income, as well as the obvious manifestation that the Agreement was composed to maximize net amounts available for child support, when compared to appellant's present contention that, in actuality, part of paragraph 4 designated maintenance was true maintenance demonstrates the existence of ambiguity. Thus, the admission of parole evidence from respondent relative to her understanding of the meaning of maintenance as used in paragraph 4 of the decree cannot be considered error, especially since, as we note, appellant likewise presented his understanding of the meaning of the term as used in paragraph 4.

■ Moreover, we find appellant's contention that his February 21, 1988 letter to respondent was an offer of settlement and, therefore, inadmissible to be meritless. The text of the letter demonstrates his aversion to remitting more money than called for by the decree to aid the child to defray camp expenses because, in his opinion, he is already sending a fair amount for child support, "ten percent of my income for each child."

■ We generally agree that there is evidentiary support for the trial court's conclusion that the parties' original intent, with the exception of the rehabilitative maintenance which ended on January 1, 1988, was primarily directed to providing funds for the support of the parties' minor children. We are troubled, however, by the fact that the trial court denied appellant's motion to terminate maintenance as provided in paragraph 4 of the decree. Minn. Stat. § 518.64(3) (1988) provides a prototype of clarity in statutory draftsmanship—it *mandates* termination of maintenance upon remarriage of the receiving party. That mandate may not be circumvented by an inquiry as to original intent of the parties. *Gunderson v. Gunderson*, 408 N.W.2d 852, 853 (Minn.1987). If the decree actually does not reflect the parties' intent, the only solution is to amend the original decree. *Id.* at 853.

■ Even if the maintenance provided in paragraph 4 of the decree is terminated, the original decree respecting child support may always be amended when there has occurred a substantial change in circumstances. The mere fact that respondent, by virtue of the application of Minn.Stat. § 518.64(3), has lost maintenance income is, of itself, sufficient showing of a substantial change in circumstances justifying a child support modification. Once maintenance is terminated, the denominated child support in the original decree—$1,000 per child—is obviously inadequate. In reconsidering modification of child support, the trial court is not limited by the guidelines found in Minn.Stat. § 518.551(5)(a) (1988), but shall consider, as well, the factors set out in Minn.Stat. § 518.551(5)(b) (1988) and, in addition, shall consider all other relevant evidence, including the original intent of the parties.[7]

Affirmed in part, reversed and remanded to the trial court for proceedings consistent herewith.

---

7. Normally the trial court's findings that neither the remarriage of respondent nor her increased earnings constituted a substantial change in circumstances would be reversed only if "clearly erroneous." *See Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986). However, here, those findings were so intertwined with the trial court's denial of appellant's motion to terminate maintenance under paragraph 4 of the original decree, we likewise set those findings aside for reconsideration together with all the statutory factors and the other relevant evidence.

COYNE, Justice (dissenting).

I fully concur in the majority's characterization of the Marriage Termination Agreement as an instrument designed to maximize the money available for the support of the parties' children while minimizing the income tax liability to the family unit, and I concur as well in the majority's acceptance of the trial court's conclusion that even though the parties denominated appellant's payments pursuant to the Agreement as "maintenance," in actuality the full amount of all payments made on or after January 1, 1988, was intended by both parties to be child support. In the light of the majority's recognition of the actual purpose of the payments required by the Agreement, I am utterly confounded by its disposition of this matter: remanding for termination of "maintenance" rather than effectuating the actual intent of the parties and the order of the trial court.

Certainly, the statutory mandate for the termination of maintenance upon remarriage of the receiving party may not be circumvented by inquiring whether the parties originally intended that the obligation continue beyond remarriage. *Gunderson v. Gunderson*, 408 N.W.2d 852, 853 (Minn. 1987). As we pointed out in *Gunderson*, if the decree actually does not reflect the intent of the parties, the solution is amendment of the decree. *Id.* But it appears to me that if the trial court here did not actually amend the original decree, the intention to do so was clearly evinced in its order for an amended decree. In addition to its conclusion of law that respondent's obligation—which was characterized as maintenance for tax purposes in the original judgment and decree—was actually intended by both parties to provide child support, in its order for amended judgment the trial court denied respondent's "motion to modify child support" and further provided that respondent should continue to pay "child support" as set forth in paragraphs three and four of the 1984 decree. It may be that the amendment might have been more artfully framed, but it strikes me that the court's choice of language reflects an attempt to continue the respondent's child support obligation without altering the tax consequences. If the majority cannot accept the trial court's order as an amendment of the original decree, it seems to me that it must at least recognize that the trial court has ruled that the parties were agreeing on child support, not on "maintenance" as that term is defined and used in Minn. Stat. ch. 518 and that the purposeful designation of child support as "maintenance" was employed solely to minimize income taxes. That recognition should be attended by remand with directions to amend the original decree to characterize all sums payable on and after January 1, 1988 as child support.

Neither can I agree with the majority's apparent acceptance of the appellant's contention that amendment of the 1984 judgment and decree constitutes a change of circumstances which relieves him of his contractual obligation for child support and justifies invoking the support guidelines found at Minn.Stat. § 518.551, subd. 5(a) (1988). Although we have previously noted that a trial court may set child support in excess of the guidelines, experience has demonstrated that child support is set below the guidelines with a fair degree of regularity but is almost never set in excess of the guidelines. Here, the court has expressly found that the child support provisions of the 1984 Agreement are neither unfair nor inequitable and, therefore, there is no basis for ignoring appellant's contractual obligation and substituting therefor the child support prescribed by the statutory guidelines.

If the amendment of the decree shifts the tax burden from respondent to appellant or creates uncertainty with respect to the tax obligation, it is for the appellant to request further modification of the decree to include express application of section 71 of the Internal Revenue Code, as amended by the Tax Reform Act of 1984, Pub.L. No. 98–369, § 422(e)(1), (e)(2), 98 Stat. 494, 798 (1984), and modification of the formula used to determine the amount of support payments so that respondent receives the same after-tax dollars for the support of the children that she would have received were the pre–1984 tax law applicable. The

record before us does not disclose any request by appellant for relief from the effect of the tax consequences of amendment of the decree but only relief from his contractual undertaking.

For these reasons, I would affirm the trial court's amendment of the 1984 decree or, in the alternative, remand solely for amendment of the 1984 decree to substitute the term "child support" for the term "maintenance."

WAHL, Justice (dissenting).

I join the dissent of Justice COYNE.