In re the Marriage of Mark ANDERSON,
Petitioner, Appellant,

v.

Anne Marie ARCHER, f/k/a Anne
Marie Anderson, Respondent.

No. CX–93–1088.

Court of Appeals of Minnesota.

Dec. 21, 1993.

Donald A. Hillstrom, Minneapolis, for petitioner, appellant.

John C. Sanders, Anoka, for respondent.

Considered and decided by PETERSON, P.J., and FORSBERG and DAVIES, JJ.

## OPINION

PETERSON, Judge.

After appellant Mark G. Anderson changed his residence, respondent Anne Marie Archer moved to modify visitation. The district court issued an order modifying visitation, and a judgment amending the parties' foreign dissolution decree was entered pursuant to the order. This is an appeal from the amended judgment. Appellant also challenges the denial of his motion to appoint a guardian ad litem for the children. We affirm.

## FACTS

The parties were married in 1983 and had three children, one born in 1985, one in 1986, and one in 1987.

In 1987 the parties moved from Minnesota to California to operate a business with appellant's family. While in California, appellant maintained a Minnesota residence and a consulting business in Minnesota. During 1987, appellant traveled back and forth between Minnesota and California.

After the parties separated in late 1987, respondent returned to Minnesota with the children. Although appellant continued to travel back and forth between California and Minnesota while the dissolution was pending, he claims he spent only 10 days out of a month in California in 1988 and even less time there in 1989.

The marriage was dissolved in 1989. Pursuant to the parties' stipulation, the dissolution decree awarded respondent physical custody of the children and granted appellant visitation. The stipulation provided:

[Appellant] shall have reasonable visitation rights with the minor children, including the following:

(a) On weekends when [appellant] is in Minnesota, every weekend, commencing as early as each Friday at 5:00 p.m. * * *;

(b) When [appellant] is in Minnesota, every Tuesday and Thursday evening from 5:00 p.m. to 8:00 p.m.;

\* \* \* \* \* \*

(g) [Appellant] shall have the children for the full term of summer vacation. During summer vacation, [respondent] will be afforded reasonable and liberal visitation.

The stipulation identified appellant as a California resident and respondent as a Minnesota resident. The stipulation also provided that the parties would have the children on alternating holidays. The holiday provision was not restricted to when appellant was in Minnesota.

In December 1989, appellant relocated to North Carolina for work-related reasons. In 1991 appellant returned to Minnesota where he continues to reside. Since 1991 the parties have followed the visitation schedule set forth in the stipulation.

According to respondent, when the parties agreed to the stipulation, they expected appellant to reside outside of Minnesota following the dissolution. Respondent testified she agreed to allow appellant extensive summer visitation and visitation every weekend and Tuesday and Thursday evenings when he was in Minnesota because she believed the children would only be seeing their father infrequently on weekends and during the week. Appellant denies respondent's claim. According to appellant, the visitation schedule was actually implemented during the latter part of 1988 to accommodate the parties' work schedules.

In March 1993, respondent brought a motion to modify visitation. The trial court found that

respondent, the children's physical custodian, sees the children for an hour and fifteen minutes on weekday mornings, when she is busy helping the children get ready for school and is herself preparing for work, and three or so hours a week on Sunday, Monday and Wednesday evenings,

which is all the time that her work schedule and the children's bed times allow.

The trial court issued an order modifying visitation, allowing appellant visitation on alternating weekends, two evenings a week, six weeks during the summer, and alternating holidays. This appeal followed.

## ISSUES

I. Did the trial court properly conclude the stipulated visitation provision was agreed to because the parties expected appellant to be in Minnesota infrequently?

II. Did the trial court err by modifying visitation to allow both parties about equal time with the children?

III. Did appellant's allegations of abuse require the appointment of a guardian ad litem for the children?

IV. Is respondent entitled to attorney fees on appeal?

## ANALYSIS

### I.

■ The district court amended the decree in this case based on its interpretation of the stipulated visitation provision. Because the interpretation of a written document is a question of law, we do not defer to the district court's interpretation of a stipulated provision in a dissolution decree. *Vanderleest v. Vanderleest*, 352 N.W.2d 54, 57 (Minn.App.1984); *see also Jensen v. Jensen*, 440 N.W.2d 152, 154 (Minn.App.1989) (interpretation of stipulation is legal question).

■ The stipulation identified appellant as a California resident and limited weekly visitation to times when appellant was in Minnesota. This shows that when the parties entered the stipulation, they did not expect appellant to reside in Minnesota. Because the decree does not indicate how much time appellant was expected to spend in Minnesota, it is ambiguous as to how much visitation was in fact intended by the parties. *See Landwehr v. Landwehr*, 380 N.W.2d 136, 138 (Minn.App.1985) (writing is ambiguous if it is reasonably susceptible of more than one interpretation when judged by its language alone).

**4**

■ If a writing is ambiguous, extrinsic evidence may be admitted to resolve the ambiguity. *Erickson v. Erickson,* 449 N.W.2d 173, 178 (Minn.1989). When extrinsic evidence is admitted, the meaning of ambiguous language is a question of fact. *Landwehr,* 380 N.W.2d at 140. Here, respondent testified that she agreed to the stipulated visitation provision because she expected appellant to be in Minnesota infrequently. The district court specifically found her testimony credible. We must defer to the district court's assessment of witness credibility. *Id.* at 139. The district court properly concluded the stipulated visitation provision was drafted to accommodate the parties' expectations that appellant would be residing in another state and not regularly exercising weekly visitation.

## II.

■ A substantial alteration of visitation rights amounting to a "restriction" of visitation requires findings that the existing arrangement "is likely to endanger the child's health or development." *Lutzi v. Lutzi,* 485 N.W.2d 311, 315 (Minn.App.1992); *see also* Minn.Stat. § 518.175, subd. 5 (1992) (court may not restrict visitation rights unless it finds visitation is likely to endanger child's health or development). Less substantial changes in visitation are governed by the best interest standard. *Lutzi,* 485 N.W.2d at 315; *see also* Minn.Stat. § 518.175, subd. 5 (court shall modify visitation whenever modification would serve child's best interests). Determining the proper statutory standard to apply is a question of law subject to de novo review. *Ayers v. Ayers,* 508 N.W.2d 515, 518 (Minn.1993).

■ A modification of visitation that "results in a reduction of total visitation time, is not necessarily a 'restriction' of visitation." *Danielson v. Danielson,* 393 N.W.2d 405, 407 (Minn.App.1986). When determining whether a reduction constitutes a restriction, the court should consider the reasons for the change as well as the amount of the reduction. *See Auge v. Auge,* 334 N.W.2d 393, 400 (Minn.1983) (when modification of visitation is required due to removal of child from jurisdiction, district court shall make reason-

able and necessary adjustments to visitation schedule provided the adjustments are in child's best interests); *Danielson,* 393 N.W.2d at 406, 407 (following removal of children to Montana, change in visitation from every other weekend plus alternating holidays to summer visitation of 2 weeks in 1986, 3 weeks in 1987, and 4 weeks in 1988 plus visitation in Montana on reasonable notice and 24 hours visitation during children's visits to Montana governed by best interest standard); *Clark v. Clark,* 346 N.W.2d 383, 385–86 (Minn.App.1984) (gradual reduction of visitation from 14 weeks to 5½ weeks per year during 4-year period following removal of child from Minnesota constituted "restriction" of visitation rights), *pet. for rev. denied* (Minn. June 12, 1984).

■ Although the modification in this case results in a reduction of appellant's total visitation time under the current circumstances, we cannot determine whether it reduces total visitation from what it would be under the circumstances anticipated by the parties when they entered the stipulation because we do not know how often appellant was expected to be in Minnesota to exercise visitation. *See* Minn.Stat. § 518.18(d) (1992) (when modifying custody order, prior order determines status quo). Nonetheless, as in the removal cases, the visitation modification resulted from changes in the parties' and the children's circumstances. As a result of appellant relocating to Minnesota, respondent has less time with the children. We also note that since the stipulation was entered, all three of the children have begun school and have less free time to spend at home. Under the current circumstances, the stipulated visitation schedule allows respondent only about three hours of free time with her children on Sunday, Monday and Wednesday evenings.

■ Although visitation is necessary to maintain the parent-child relationship between the child and the noncustodial parent, it is also important to maintain the parent-child relationship between the child and the custodial parent. *See Bear v. Bear,* 415 N.W.2d 389, 393 (Minn.App.1987) (recognizing "the reasonable desire on the part of a working custodial parent * * * to spend

some free weekend time with the minor child"); *Clark*, 346 N.W.2d at 385 (intent of visitation statute is to allow child to maintain a two-parent relationship). The district court properly concluded a modification of visitation was necessary to maintain the children's relationship with respondent.

■ The visitation schedule the trial court ordered allows appellant substantial total visitation time. Excluding time when they will be sleeping or in school, the children will spend about equal amounts of time with each parent. Even if the modification reduced appellant's visitation time from what the parties intended when they entered the stipulation, in light of the reason for the modification and the substantial amount of visitation granted to appellant, the modification did not constitute a restriction of visitation. *Cf. Lutzi*, 485 N.W.2d at 314–16 (mother's proposal to modify nearly equal physical custody arrangement to give her full custody during school year was a restriction of visitation since it greatly altered father's rights and was not required by her move).

■ Because the modification was not a restriction of visitation, the best interest standard, not the endangerment standard, applies to this case. *See id.* at 315 (best interest standard applies to less substantial alterations of visitation). The district court has broad discretion to decide how to serve the child's best interests in the area of visitation. *Bear*, 415 N.W.2d at 393. The visitation schedule set by the district court was within its discretion.

### III.

■ The district court is required to appoint a guardian ad litem if it "has reason to believe that the minor child is a victim of domestic child abuse." Minn.Stat. § 518.165, subd. 2 (1992). Because respondent presented sufficient evidence to rebut appellant's unsubstantiated allegation of physical abuse, the district court did not err by denying appellant's motion to appoint a guardian ad litem. *See Baum v. Baum*, 465 N.W.2d 598,

599–600 (Minn.App.1991) (generalized and unsubstantiated allegations of abuse that are adequately rebutted do not require appointment of guardian ad litem), *pet. for rev. denied* (Minn. Apr. 18, 1991).

### IV.

In dissolution cases, the court shall award attorney fees if necessary to enable a party to participate in the proceeding provided the other party has the means to pay them. Minn.Stat. § 518.14 (1992). Respondent has not established that she is unable to pay her own attorney fees. We may also award attorney fees if an appeal was frivolous or in bad faith. *Dabrowski v. Dabrowski*, 477 N.W.2d 761, 766 (Minn.App.1991). The issues appellant raised on appeal had merit. Respondent's motion for attorney fees on appeal is denied.

### DECISION

The district court properly determined that a modification of visitation was necessary to maintain the children's relationship with respondent. The visitation schedule the trial court established was within its discretion. The trial court properly denied appellant's motion to appoint a guardian ad litem.

**Affirmed.**

DAVIES, Judge (concurring specially).

Although I concur with the majority in all respects, I add one observation on an issue not raised.

As is common in visitation cases,[1] the order here provides that visitation will be on alternate weekends and holidays, and that the schedule of holiday visitation is to be alternated each year. I question whether this shows adequate consideration of the best interests of the child (or much consideration at all).

For example, ought not the custodial home and neighborhood be the place of visitation on birthdays (for parties), on Halloween (for trick-or-treat groups), and on Christmas Eve and morning (for Santa's visit)? (A second

---

1. "In most cases it is quite standard for the noncustodial parent to be granted visitation rights on alternating weekends and alternating holidays." 14 Martin L. Swadin & Linda A. Olup, *Minnesota Practice* § 6.33 (1992).

visit by Santa can be arranged by the non-custodial parent.)

Does one of the parents have an extended family that annually turns Thanksgiving into a family tradition full of priceless memories?

Which parent has a cabin at the lake, which is the annual Fourth of July gathering place for three or four generations?

And Labor and Memorial Day visitation at that lake cabin might give the children an opportunity (in opening and closing for the season) to have the experience of, and thus learn the joy of, work.

Which parent will take annual New Year's Day ski trips—either strictly for adults, or with kids—which would make visitation that day either unhappy or particularly joyful?

Should the season openers (fishing and baseball) be treated as holidays to be spent with the appropriate parent? Let the adults who structure visitation spend a few minutes finding out.

And after the first year holiday visitation schedule has been worked out in the best interest of the children, should it not be used in subsequent years as well? If thought is given to where the children would get the most benefit, holiday by holiday, it is almost certain that alternating between years should not be adopted.

Finally, cannot something better be done about weekend rigidity? Holidays, special events, and tummy aches continually disrupt the schedule of alternate weekends. So might it work to have something like two out of four (or three) a month (and three out of five) for the noncustodial parent, with that parent having first choice, subject, perhaps, to one substitution per month by the other parent. (Maybe that would be complicated enough so the parents might start working visitation out themselves.)

What I mean to say is that visitation should be ordered, not with the idea of absolutely equal treatment for the parents, but rather to accommodate the best interests of the children—every weekend, every holiday, and every year. Parents can live with a degree of inequality, whichever way it falls, but the children of a divided family need every opportunity we can provide to build and enjoy family traditions.

Neither parent has raised the issue in this case, so my comments constitute only a suggestion for consideration by the parents, mediators, lawyers, judges, and court services agencies who together design visitation schedules *for the children*.