*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0058**

In re the Marriage of: Melissa Louise Constantini, petitioner,
Appellant,

vs.

Brent John Constantini,
Respondent.

**Filed January 25, 2016
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Hennepin County District Court
File No. 27-FA-07-3885

Melissa Constantini, Plymouth, Minnesota (pro se appellant)

Brent Constantini, Plymouth, Minnesota (pro se respondent)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Mother challenges the district court's orders modifying the parties' parenting-time schedule, requiring mother to repay child support, and appointing a parenting-time expeditor. Because the district court did not restrict mother's parenting time and properly

applied the best-interests standard when modifying parenting time, and because we do not discern obvious prejudicial error in the district court's child-support decision, we affirm in part. But because the district court erroneously authorized the parenting-time expeditor to modify custody and failed to apportion the expeditor's fees, we reverse in part and remand.

**FACTS**

The marriage of appellant Melissa Louise Constantini (mother) and respondent Brent John Constantini (father) was dissolved by amended judgment and decree in August 2009. The district court granted the parties joint legal and joint physical custody of their son, M.C., who was born in 2005. The parties stipulated to equal parenting time under the following schedule:

- Mother: Wednesday overnight, Thursday overnight, and every other weekend from Friday to Monday morning.

- Father: Monday overnight, Tuesday overnight, and every other weekend from Friday to Monday morning.

The district court ordered father to pay mother $692 per month in child support.

In April 2013, father moved to temporarily suspend mother's parenting time and to grant him temporary sole legal and sole physical custody of M.C. Father stated that he had concerns about mother's mental health and M.C.'s school attendance, among other issues. The district court issued a temporary order that reduced mother's parenting time and imposed a supervision requirement. It also granted father sole legal and physical custody pending an investigation by a guardian ad litem.

In April 2014, the district court issued a permanent order modifying the parties' parenting-time schedule and requiring mother to reimburse father $13,440 for previously

paid child support. The district court determined that modifying the parenting-time schedule was in M.C.'s best interests under Minn. Stat. § 518.175, subd. 5 (2012). The district court explained that it was "very concerned for the well-being of [M.C.] and his need for educational support," noting that M.C. had a history of being late or absent from school and that he completed most of his homework while he was with father. The district court reduced mother's parenting time to after school on Wednesdays (approximately 2:25 p.m.) until 7:00 p.m., and every other weekend from after school on Friday until Monday morning. The modified schedule applies only during the months when M.C. is in school. In addition, the district court ruled that if M.C. does not have school on a Monday following mother's weekend parenting time, mother's parenting time is extended until 7:00 p.m. on Monday.

The district court also appointed a parenting-time expeditor (PTE) under Minn. Stat. § 518.1751 (2014). It authorized the PTE to "[t]emporarily modify custody until [mother's] mental health issue is resolved or properly addressed" if the PTE finds that mother's mental health "is declining or . . . is potentially [a]ffecting [her] ability to effectively parent." Father had requested that the parties equally share the costs of the PTE, but the district court denied that request and ruled that "the parties shall share in the costs as set forth by the appointed [PTE]."

Regarding child support, the district court determined that father had overpaid mother $13,440 in child support because mother received income from employment as a teacher for two months in 2011 and failed to disclose that she had received approximately $35,000 in disability benefits between October 2008 and October 2010. The district court

3

ordered mother to reimburse the overpayment and allowed father to recoup the amount by not paying child support during summer months when the parties share equal parenting time.

Mother asked the district court to reconsider its parenting-time modification, arguing that the reduction "is so substantial" that it "constitute[s] a restriction . . . and may not be ordered without an evidentiary hearing." The district court issued an order extending mother's parenting time to 8:00 p.m. on Wednesdays and 8:00 p.m. on Mondays that M.C. does not have school following mother's weekend parenting time. The district court otherwise affirmed its parenting-time decision and provided detailed reasons for the modification. Mother moved to amend the order, asking the district court to find that awarding father "all overnights during the school year would be a substantial change in the parenting time schedule and a restriction of [mother's] parenting time" and that "reducing [mother's] parenting time is not in [M.C.'s] best interests." The district court denied mother's motion, explaining that "the modification of parenting time was not a restriction of [mother's] parenting time" and that it therefore "applied the best interests of the child standard in determining the modified parenting time schedule." Mother appeals.

## D E C I S I O N

## I.

Mother challenges the parenting-time modification, arguing that the district court should have applied the child-endangerment standard under Minn. Stat. § 518.18(d)(iv)

4

(2014) instead of the best-interests standard under Minn. Stat. § 518.175, subd. 5. Mother also argues that the district court should have held an evidentiary hearing.

A substantial alteration of parenting time that amounts to a "restriction" is not allowed unless the existing parenting-time schedule is likely to endanger the child's health or development. *Anderson v. Archer*, 510 N.W.2d 1, 4 (Minn. App. 1993); *see also* Minn. Stat. § 518.175, subd. 5 (providing that the district court may not restrict parenting time unless it finds that parenting time "is likely to endanger the child's physical or emotional health or impair the child's emotional development"). Less substantial changes are governed by the best-interests standard. *Anderson*, 510 N.W.2d at 4; *see also* Minn. Stat. § 518.175, subd. 5 (providing that the district court shall modify parenting time "[i]f modification would serve the best interests of the child").

"There is no statutory definition of what constitutes a 'restriction' of parenting time." *Suleski v. Rupe*, 855 N.W.2d 330, 336 (Minn. App. 2014). "To determine whether a reduction in parenting time constitutes a restriction or modification, the court should consider the reasons for the change as well as the amount of the reduction." *Dahl v. Dahl*, 765 N.W.2d 118, 124 (Minn. App. 2009). Not every reduction in parenting time constitutes a restriction of parenting time. *Id.* at 123. An evidentiary hearing is required only if parenting time is restricted. *Matson v. Matson*, 638 N.W.2d 462, 468 (Minn. App. 2002). "Insubstantial parenting-time modifications or adjustments do not require an evidentiary hearing." *Id.*

The intent of section 518.175 is to allow a child to maintain a relationship with both parents. *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn. App. 1984), *review denied* (Minn.

5

June 12, 1984). "Appellate courts recognize that a district court has broad discretion to decide parenting-time questions and will not reverse a parenting-time decision unless the district court abused its discretion by misapplying the law or by relying on findings of fact that are not supported by the record." *Suleski*, 855 N.W.2d at 334 (citations omitted). "Determining the legal standard applicable to a change in parenting time is a question of law and is subject to de novo review." *Dahl*, 765 N.W.2d at 123.

As to the amount of the reduction, section 518.175 establishes a rebuttable presumption that each parent is entitled to receive at least 25% of parenting time and provides guidance regarding how to calculate parenting time:

> For purposes of [subdivision 1(g)], the percentage of parenting time may be determined by calculating the number of overnights that a child spends with a parent or by using a method other than overnights if the parent has significant time periods on separate days when the child is in the parent's physical custody but does not stay overnight. The court may consider the age of the child in determining whether a child is with a parent for a significant period of time.

Minn. Stat. § 518.175, subd. 1(g) (Supp. 2015).

Under the amended judgment and decree, mother and father split parenting time equally throughout the year. That is the baseline parenting-time order. *See Dahl*, 765 N.W.2d at 120 ("[T]he baseline parenting-time order is the last final and permanent order establishing parenting time."). The district court's modification of the parenting-time schedule only affected weekdays during months when M.C. was in school. Mother went from having overnight parenting time every Wednesday and Thursday to having parenting time on Wednesdays after school until 8:00 p.m., but her weekend and summer parenting

6

time remains the same. The district court also extended mother's weekend parenting time on Mondays when M.C. does not have school.

The district court determined that it reduced mother's parenting time by nine hours per week: one to two hours on Wednesdays after father picks up M.C. from mother at 8:00 p.m., one to two hours before school on Thursdays, and five to six hours after school on Thursdays before bed. It determined that mother would have 38% parenting time during the entire year. The district court did not include time when M.C. is at school or asleep in its calculations. The district court noted that mother "continues to have considerable school year parenting time . . . and one-half . . . of the summer." The district court did not abuse its discretion in determining the amount of the reduction. Although subdivision 1(g) of section 518.175 suggests using overnights to calculate parenting time, it authorizes other methods.

As to the reasons for the modification, the district court explained that it reduced mother's parenting time because it was concerned about M.C.'s educational needs because he was frequently tardy and absent from school and did not devote an appropriate amount of time to homework while in mother's care. The district court supported those concerns with factual findings that will not be disturbed unless clearly erroneous. *See Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn. 1978) ("It is . . . well settled that factual findings by the trial court upon which [a parenting-time] determination is based may not be set aside unless clearly erroneous."). Specifically, the district court found that mother "has a difficult time managing to get [M.C.] to school on time," noting that M.C. was late or absent between 25 and 30% of the time over a two-to-three-year period and that M.C.'s

7

school notified the parents that it was concerned regarding his progress due to "excessive" tardiness.

Mother argues that the district court "ignored . . . that [M.C.] had no absences and only two tardies in the five months he was in school while the case was pending." But the district court specifically referred to those facts in its decision and viewed the two tardies differently. The district court stated that it was "quite troubled that even in the wake of litigation concerning [M.C.'s] poor school attendance record and allegations that [mother] is unable to get [M.C.] to school on time, that [M.C.] was tardy on two (2) separate occasions after two (2) court hearings and a mediation session."

The district court also found that M.C. spent only 12 minutes on a particular math assignment while in mother's care from a Thursday to a Sunday, did most of his homework while in mother's care "in the late evening hours near midnight," and did "significant amounts of homework" while in father's care on Mondays and Tuesdays. The district court stated: "It appears that [M.C.] must do significant amounts of homework for longer periods of time while in [father's] care to compensate for missed time working on homework while in [mother's] care." Mother complains that the district court "relied entirely on one log from math homework," but she does not dispute the accuracy of the district court's findings based on that information.

The district court's reasons for modifying the parenting-time schedule are valid. Given the amount of the reduction and the reasons for the change, the district court correctly determined that the modification does not constitute a restriction of mother's parenting time and that the best-interests standard therefore applies. *See Anderson*, 510

8

N.W.2d at 4. Thus, the district court was not required to find endangerment or hold an evidentiary hearing. *See Matson*, 638 N.W.2d at 466, 468.

"The district court is granted broad discretion to determine what is in the best interests of the child when it comes to [parenting time,] and we will not overturn its determination absent an abuse of discretion." *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001). The district court did not abuse its discretion in this case. We therefore affirm the parenting-time modification.

## II.

Mother challenges the district court's retroactive child-support modification. The amended judgment and decree required father to pay mother $692 per month in child support. But because mother was unemployed, the district court reserved the issue of what impact, if any, mother's receipt of disability benefits might have on the child-support obligation. In its April 2014 order, the district court found that mother had "intentionally concealed information from [father] that she had received retroactive disability benefits in order to avoid a reduction in the child support amount." The district court found that mother received $35,000 in benefits between October 2008 and October 2010, that mother received additional income for two months in 2011, and that father had therefore overpaid $13,440 in child support. The district court ordered mother to reimburse father for the overpayment.

Mother states that she has no income and no ability to repay the child support. She asserts that "[t]here was no analysis . . . of [her] need for child support and the impact of not receiving any child support during the summer has on [her] ability to support [M.C.]"

9

She does not develop the argument or provide legal authority to support her position. Father argues that because mother "did not make a legal argument in her brief[,] it is inappropriate for an appellate court to create or postulate what her legal arguments are as it would infringe on [his] right to be able to respond with specificity to the legal issues at hand." Father therefore asks this court to "deny an analysis based on lack of argument." Father's position has merit. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Because we do not discern obvious prejudicial error, mother's assignment of error is waived.

## III.

Mother challenges the district court's appointment of a PTE. Father points out that mother did not contest the appointment in the district court. Generally, we will not consider issues that were not raised and determined in the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). However, an appellate court "may review any . . . matter as the interest of justice may require." Minn. R. Civ. App. P. 103.04; *see also Putz v. Putz*, 645 N.W.2d 343, 350 (Minn. 2002) (stating that the rule that appellate courts will not address issues raised for the first time on appeal is not "ironclad" (quotation omitted)). Because the PTE appointment does not comply with the authorizing statute, we address mother's challenges to the appointment in the interests of justice.

Mother argues that the district court erroneously authorized the PTE to modify custody. The purpose of a PTE is "to resolve parenting time disputes by enforcing,

10

interpreting, clarifying, and addressing circumstances not specifically addressed by an existing parenting time order and, if appropriate, to make a determination as to whether the existing parenting time order has been violated." Minn. Stat. § 518.1751, subd. 1b(a). A "parenting time dispute" means "a disagreement among parties about parenting time with a child," such as "a dispute about an anticipated denial of future scheduled parenting time," "a claim by a parent that the other parent is not spending time with a child," and "a claim by a parent that the other parent is denying or interfering with parenting time." *Id.*, subd. 1b(b). "Appointment of a parenting time expeditor must be conducted following the statutory procedures set out in Minn. Stat. § 518.1751." *Braith*, 632 N.W.2d at 718.

The district court authorized the PTE to "[t]emporarily modify custody" if the PTE determines that mother's mental health "is declining or . . . is potentially [a]ffecting [her] ability to effectively parent." But the PTE statute clearly provides that a PTE's role is limited to resolving parenting-time disputes; it does not suggest any role for a PTE in custody decisions. *See* Minn. Stat. § 518.1751, subd. 1b(a); *cf.* Minn. Stat. § 518.167 (2014) (providing for appointment of custody investigators). In fact, the statute prohibits a PTE decision "that is inconsistent with an existing parenting time order." Minn. Stat. § 518.1751, subd. 3(c). A temporary custody modification would likely be inconsistent with the existing parenting-time order. Moreover, custody cannot be modified unless a district court conducts "a full hearing with an opportunity for cross-examination of the witnesses," *Hummel v. Hummel*, 304 N.W.2d 19, 19 (Minn. 1981), and finds "that a change [in circumstances] has occurred . . . and that the modification is necessary to serve the best

11

interests of the child." Minn. Stat. § 518.18(d) (2014). The district court therefore erred by authorizing the PTE to modify custody, even temporarily.

Mother also argues that the district court erred by ruling that "the parties shall share in the costs as set forth by the appointed [PTE]" without determining how the fees will be apportioned between the parties. When appointing a PTE, the district court "must identify . . . the apportionment of fees" and "shall apportion the fees of the expeditor among the parties, with each party bearing the portion of fees that the court determines is just and equitable under the circumstances." Minn. Stat. § 518.1751, subds. 2(c), 2a. "Neither party may be required to submit a dispute to a [parenting-time] expeditor if the party cannot afford to pay for the fees of an expeditor and an affordable expeditor is not available, unless the other party agrees to pay the fees." *Id.*, subd. 2a; *see also id.*, subds. 1a, 1a(3) ("A party may not be required to refer a parenting time dispute to a parenting time expeditor . . . if . . . the party is unable to pay the costs of the expeditor.").

Mother argues that she has no income, has applied for disability benefits, and cannot pay for a PTE. Father responds that mother maintains "many . . . luxuries," including a boat and a home on Lake Minnetonka, and "has [access] to money for more than the normal necessities in life." The district court did not apportion the PTE fees between the parties or determine what fee apportionment is just and equitable under the circumstances of this case. Instead, it appears to have delegated the apportionment decision to the PTE, which is inconsistent with the procedures set forth in section 518.1751. The district court is not authorized to depart from those statutory procedures when appointing a PTE. *See Braith*, 632 N.W.2d at 718.

12

Because the district court inappropriately delegated authority to modify custody to the PTE and failed to apportion the PTE fees as required by statute, we reverse the PTE appointment and remand for consideration of a PTE appointment consistent with section 518.1751.

**Affirmed in part, reversed in part, and remanded.**