**In re the Marriage of Douglas L. AYERS, Petitioner, Respondent,**

**v.**

**Annette C. AYERS, n/k/a Annette C. Kotz, Appellant.**

No. C1–92–997.

Court of Appeals of Minnesota.

Jan. 5, 1993.

Review Granted Feb. 12, 1993.

Richard D. Goff, Sonja Trom Eayrs, Goff, Kaplan & Wolf, P.A., St. Paul, for respondent.

Jo Marie Alexander, Henningson & Snoxell, Ltd., Minneapolis, for appellant.

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment

Considered and decided by RANDALL, P.J., and DAVIES and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.*

Annette C. Ayers, n/k/a Annette C. Kotz, appeals from an order denying her motion for permission to move the permanent residence of the parties' children to Illinois, and determining the children's best interests would be served by having them reside in Minnesota with their father, respondent Douglas L. Ayers. We reverse, and remand for further proceedings on the issue of child support and establishment of a workable visitation schedule.

## FACTS

The parties were married in 1980. At the time of the marriage dissolution in 1984, they entered a stipulation which was incorporated into the judgment. With respect to custody of their two children, who were two and three years old at the time, the judgment provided:

> That custody of the minor children of the parties * * * shall be joint and in both of the Co–Petitioners herein, and each of the parties shall have reasonable visitation rights with the said children when in the custody of the other party.

The judgment did not set out a schedule allocating physical custody of the children between the parties. However, appellant had been the children's primary caretaker since birth and the children continued to reside with her, subject to occasional and unstructured visitation by respondent.

In July 1988, appellant and the children moved from Stillwater, Minnesota, to Detroit Lakes, Minnesota, in order to be with appellant's fiance, who is now her husband. Shortly thereafter, respondent began to exercise more frequent visitation, sometimes as often as every other weekend.

The parties began to have some problems with their custody arrangement, and medi-

pursuant to Minn. Const. art. VI, § 2.

ation was ordered. They eventually reached a stipulation, which was incorporated into a 1990 amendment to the judgment.

This amended judgment allegedly retained joint legal and physical custody. It stated, however, that "[t]he primary residence of [the children] shall be with [appellant]." Regarding moving the children's residence out of Minnesota, it stated:

If [appellant] desires to move the permanent residence of the minor children to a state other than Minnesota, she must first obtain written consent of [respondent], or an Order from the Court.

Finally, the amendment set out a detailed schedule providing that respondent would have "physical custody" of the children every other weekend, alternating holidays, most of the summer, and half of other school vacation periods. Under this schedule, the children spent approximately 245 days each year with appellant and the remaining 120 days with respondent.

In September 1991, appellant's husband accepted a new job in Effingham, Illinois. Appellant thereafter brought this motion for permission to move the residence of the children to Illinois and for modification of respondent's "visitation schedule" in recognition of the move. Appellant's proposed schedule would have resulted in the children being with respondent approximately 97 days a year, rather than the 120 days provided by the 1990 amended judgment and decree. Respondent opposed the move, and requested that custody be modified so that he be granted primary physical custody of the children.

A three-day evidentiary hearing was held in February 1992. Respondent testified that he has lived in the same house since 1984, and that he has no plans to move. He further testified that he has worked for the same company for ten years and currently earns $65,000 per year. At the time of the hearing, respondent was engaged to a woman whom he had known for almost five years; they have since married.

Appellant testified that she does not currently work outside the home. She further testified that with the exception of occasional outside employment, she has remained at home to care for the children since their births. She and her husband also have two daughters, who at the time of the hearing were approximately two years old and four months old.

Appellant's husband is a journalist and has held a number of different jobs with small circulation newspapers in Minnesota. Each job change represented a career advancement, and offered more responsibility and income. He is currently the managing editor of the local newspaper in Effingham, Illinois and earns $42,000 per year.

A large portion of the evidentiary hearing concerned appellant's husband and his history of chemical abuse. During his testimony, he was quite candid about his past drug problems. While he completed treatment in 1981, he resumed his use of drugs and alcohol almost immediately. He testified he stopped taking drugs in 1986, and stopped using alcohol in November 1991. At the time of the hearing, he was attending meetings for Alcoholics Anonymous and Narcotics Anonymous.

As part of these proceedings, appellant's husband was evaluated by a chemical dependency counselor. The counselor concluded that he was not currently abusing alcohol or chemicals of any kind. However, the counselor also acknowledged that if he ever resumes his use of alcohol, he will be "at risk" of going back to drugs. The counselor nevertheless gave appellant's husband a "good prognosis" for continuing recovery.

The children, who were 10 and 11 years old at the time of the February 1992 hearing, were evaluated by several people. Although the oldest child generally refused to express a preference, she did suggest to one counselor that she preferred to remain with her mother. The younger child indicated that he preferred to remain in Minnesota with either parent.

A court-ordered custody study was prepared by a family court counselor with the Washington County Department of Court Services. The counselor recommended that appellant and the children be allowed to

move to Illinois. She explained that her recommendation would maintain the successful co-parenting relationship currently existing between the parties, and preserve the children's relationships with their father and extended family.

In an order issued in May 1992, the trial court denied appellant's motion to move the residence of the children. The court determined that the best interests of the children would be served by maintaining joint legal and physical custody in both parties, with the primary residence of the children to be with respondent in Minnesota.

## ISSUES

1. In denying appellant's request to change the residence of the children from Minnesota to Illinois, did the trial court err in applying the wrong standard?

2. Applying the proper standard, should a change of residence to Illinois have been allowed?

3. Is appellant entitled to an award of attorney fees on appeal?

## ANALYSIS

1. Appellate review of custody decisions is "limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Lenz v. Lenz,* 430 N.W.2d 168, 169 (Minn.1988). When determining which statutory standard applies, we are presented with an issue of law upon which we need not defer to the trial court. *Dabrowski v. Dabrowski,* 477 N.W.2d 761, 764 (Minn.App.1991).

Custody modification proceedings are governed by Minn.Stat. § 518.18, which provides in pertinent part:

(d) If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best inter-

ests of the child. In applying these standards the court *shall* retain the custody arrangement established by the prior order unless:

\*    \*    \*    \*    \*    \*

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

\*    \*    \*    \*    \*    \*

(e) In deciding whether to modify a prior joint custody order, the court shall apply the standards set forth in paragraph (d) unless: (1) the parties agree in writing to the application of a different standard, or (2) the party seeking modification is asking the court for permission to move the residence of the child to another state.

Minn.Stat. § 518.18 (Supp.1991) (emphasis added).

Under this statute, the trial court must retain the preexisting custody arrangement unless the statutory conditions are met. *See* Minn.Stat. § 645.44, subd. 16 (1990) (" 'Shall' is mandatory"). We believe the trial court in this case erred in determining that Minn.Stat. § 518.18(e) required application of the "best interests of the children" standard to appellant's request for permission to move the children's residence, because appellant's motion did not seek to "modify a prior joint custody order." Without such an order, Minn.Stat. § 518.18(e) is not applicable and Minn.Stat. § 518.18(d) applies.

Our conclusion may at first appear to be inconsistent with the parties' designation of their custody arrangement as "joint." Our conclusion may also appear to ignore a recent statement by this court to the effect that we are bound to accept the parties' denomination of custody. *See Lutzi v. Lutzi,* 485 N.W.2d 311, 314 (Minn.App. 1992). However, since this stipulation is internally inconsistent, the parties' intent

must be ascertained by examining the actual nature of the custody arrangement.[1]

In *Lutzi*, the parties' stipulation referred to the mother having physical custody of the children. However, implementation of the stipulation resulted in each parent having equal custodial time. Upon the mother's motion to relocate with the children, the trial court concluded that the parties' physical custody arrangement was actually joint and amended the stipulation accordingly. On appeal, this court reversed, and held that "courts must accept the denomination of custody stipulated by the parties." *Id.* at 314. This court further noted that the fact that parents spend an unequal amount of time with a child does not necessarily preclude the physical custody arrangement from being labeled "joint." *Id.*

In this case, however, the parties' stipulation refers to a "joint" physical custody arrangement but then states the children's "primary residence" shall be with appellant. The stipulation later refers to appellant's ability to move the children's "permanent residence" with respondent's consent or upon court order. However, a custody arrangement where the children's "residence" is with one parent is statutorily incompatible with the term "joint physical custody." *See* Minn.Stat. § 518.003, subd. 2 (1990) (" 'Residence' means *the* place where a party has established a permanent home") (emphasis added); Minn.Stat. § 518.003, subd. 3(d) (1990) ("joint physical custody" means that a child's residence is "structured *between* the parties") (emphasis added).

■ We are aware that these statutory terms retain their definitions "unless otherwise agreed by the parties." Minn.Stat. § 518.003, subd. 3 (1990). We are also aware that when parties have not explicitly

redefined a term in their stipulation, they may implicitly do so by setting out a custodial schedule and calling it something, such as "joint physical custody." *See Lutzi*, 485 N.W.2d at 314. However, we cannot conclude that, without more, parties may implicitly redefine a term to mean the opposite of its statutory definition, such as awarding one parent a child's "permanent residence" but calling the award "joint physical custody." [2]

The meaning of the stipulation in this case is further clouded by its provision that if appellant desires to move the permanent residence of the children to another state, she must first obtain respondent's consent or a court order. This provision mirrors the statutory language used to explain the procedure a child's sole physical custodian must follow when attempting to move the child's residence out of state. *See* Minn. Stat. § 518.175, subd. 3 (1990); *see also Auge v. Auge*, 334 N.W.2d 393, 397 (Minn. 1983) ("the limited purpose [of Minn.Stat. § 518.175, subd. 3] is to safeguard the visitation rights of the *noncustodial* parent") (emphasis added).

Thus, unlike *Lutzi*, where the stipulation's custody denomination was inconsistent with the stipulation's implementation, the stipulation here is internally inconsistent. It sets out a custodial standard which places the children's "permanent residence" with appellant, calls the arrangement "joint physical custody," and goes on to provide that appellant may move the children's "permanent residence" out of state by meeting the same threshold a sole physical custodian would have to meet under the visitation statute.

■ On these facts and on this record, we must conclude that the parties intended that the children would reside with appel-

---

1. This case illustrates the fact that joint physical custody arrangements are often inappropriate or unworkable, especially in subsequent modification proceedings, and should be agreed to only in exceptional cases. Parties should thus be particularly careful when drafting a stipulation which provides for joint physical custody. *See Peterson v. Peterson*, 393 N.W.2d 503, 506 (Minn.App.1986).

2. Because the parties' stipulation here functionally used the term "joint physical custody" to mean the opposite of its statutory definition, we note that interpreting and applying the stipulation would have been easier had the parties explicitly defined the critical terms. *See Auer v. Scott*, 494 N.W.2d 54 (Minn.App.1992) (a court's ability to apply or interpret a maintenance stipulation is limited where the parties do not explicitly define the critical terms).

lant and that respondent's contacts with the children would be more in the nature of visitation. Under such an arrangement, there is a presumption that appellant may move the children's residence. *Auge*, 334 N.W.2d at 398–400. Further, we note that parents may not "draft around" this presumption. *Geiger v. Geiger*, 470 N.W.2d 704, 707 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 1, 1991).

█ While *Auge* refers to the child's "best interests," it does so while specifically referring to Minn.Stat. § 518.18(d). *See Auge*, 334 N.W.2d at 399–400. As noted previously, Minn.Stat. § 518.18(d) prohibits custody modifications unless certain statutory thresholds have been met. *Auge's* application here thus requires a showing of endangerment under Minn.Stat. § 518.-18(d)(iii). Indeed, to read *Auge* as requiring a best interests analysis without a threshold showing of endangerment would render the *Auge* presumption illusory by allowing the "*de novo* consideration of who is best suited to have custody," which the supreme court explicitly prohibited. *See Auge*, 334 N.W.2d at 399. We therefore conclude that the trial court erred in not giving appellant the benefit of the *Auge* presumption, and in reexamining the best interests of the children.[3]

█ 2. Upon proper application of that presumption, appellant is entitled to move the children's residence to Illinois. Respondent presented no evidence that appellant is an unfit parent, or that the children are endangered by living primarily with her. Nor is there any evidence that the attitude of appellant's husband about his past chemical abuse has had an adverse impact on the children. Indeed, the children do not

even seem to be aware of his past problems. Even if he is still consuming alcohol, there is no evidence to show that he is a poor step-parent or that he is unstable in his personal or professional life. Finally, appellant's husband testified that they plan to remain in Illinois, and there is no evidence to suggest that his career will require future moves. Under these circumstances, it cannot be concluded that the move to Illinois will endanger the children.

In recognition of the distance between appellant's new residence and respondent's residence,[4] appellant seeks to reduce the number of days per year that the children spend with respondent to approximately 97. Her proposed schedule would provide respondent with longer, albeit less frequent, periods of time with the children. The adjustments she seeks are insubstantial: the children would still spend the summers and most school vacations with respondent. We therefore remand for the trial court to make reasonable and necessary modifications of visitation and appropriate adjustments in support. *See Auge*, 334 N.W.2d at 400.

█ 3. Appellant requests an award of attorney fees on appeal, pursuant to Minn. Stat. § 518.14 (1990). This court has the authority to make such an award. *See, e.g., Reif v. Reif*, 426 N.W.2d 227, 231–32 (Minn.App.1988).

The evidence shows that appellant does not have the ability to pay and respondent does, and that an award of fees will serve to assist appellant in her good faith assertion of her rights. We therefore award appellant attorney fees of $500 in connection with this appeal.

---

**3.** This conclusion is consistent with an affidavit by the attorney who represented appellant when the stipulation was drafted. In that affidavit, which was submitted by appellant in connection with her present motion to move the children's residence, the attorney states:

> At no point did we agree to the establishment of a 'level playing field' should [a motion to move the children's residence] be brought, as can be seen from the stipulation itself, no such language was included.

Because attorneys are officers of the court, absent evidence to the contrary, we must take

these statements as true. *Thomas v. Ross*, 412 N.W.2d 358, 360 (Minn.App.1987). Thus, we must accept as fact that the parties did not agree to a "level playing field."

**4.** The evidence established that it took four hours to drive one-way from Detroit Lakes, Minnesota, to respondent's home. By contrast, a one-way trip from Effingham, Illinois, to respondent's home will take approximately five hours. This one-way trip includes an airplane flight and a two-hour car ride from Effingham to the nearest airport in St. Louis, Missouri.

## DECISION

The trial court's decision denying appellant permission to move the children's residence to Illinois is reversed and physical custody of the children should be promptly returned to appellant. The matter is remanded for further proceedings on the issue of child support and adjustment of respondent's visitation schedule.

Reversed and remanded.

RANDALL, Judge (dissenting).

I respectfully dissent.

I believe the majority ignores the unambiguous language of Minn.Stat. § 518.18(e) (Supp.1991):

> In deciding whether to modify a prior joint custody order, the court shall apply the standards set forth in paragraph (d) unless: (1) the parties agree in writing to the application of a different standard, or (2) *the party seeking modification is asking the court for permission to move the residence of the child to another state.*

(Emphasis added.)

The endangerment statute set out in Minn.Stat. § 518.18(d) is not applicable because this was not a move within the state of Minnesota. Thus, the trial court did not err by applying the "best interests of the children" standard. I believe the majority erroneously accepted appellant's argument that the "endangerment" standard of Minn. Stat. § 518.18(d) controls, and thus placed an impossible burden on respondent, namely, to prove that appellant's request to move the children to Illinois would "endanger" the children's health. That standard could not be met as both parents have been fit parents since the dissolution to have custody and have both shared joint legal and physical custody. The trial court, following precedent, felt the proper standard when there is joint custody was the best interests of the children when one joint custodian requests permission to permanently move to another state. *See Dabrowski v. Dabrowski*, 477 N.W.2d 761, 764–65 (Minn.App.1991).

The majority avoids the clear language of Minn.Stat. § 518.18(e) by claiming the statute and applicable case law do not control because this was not a "true joint custody" situation. I disagree. The parties' initial judgment and decree of dissolution incorporated a stipulation they both signed. With respect to custody of the children, the judgment and decree provided:

> That custody of the minor children of the parties * * * shall be joint and in both of the Co–Petitioners herein, and each of the parties shall have reasonable visitation rights with the said children when in the custody of the other party.

Between 1984 and 1988, appellant and respondent shared legal and physical custody pursuant to that judgment and decree. In 1988, appellant and the children moved to another town, some visitation problems arose, and in November 1988, the parties were ordered to participate in mediation. With the assistance of mediation, the parties reached a stipulation to amend the original judgment and decree. The 1990 amended judgment and decree *retained joint legal and physical custody.* The amended judgment and decree further provided:

> If [appellant] desires to move the permanent residence of the minor children to a state other than Minnesota, she must first obtain the advance written consent of [respondent], or an Order from the Court. If the parties are unable to agree upon this issue, they will first attempt to resolve it through mediation before court action is taken.

In September 1991, appellant brought a motion for permission to move the residence of the children to Illinois. Respondent opposed the motion and, if appellant moved, asked for primary physical custody of the children. There was a three-day evidentiary hearing in February 1992 following which the court determined the best interests of the children would be served by maintaining the existing joint legal and physical custody but now changing the primary physical custody of the children to be with respondent in Minnesota.

The majority argues that although the parties continually call their custody arrangement "joint," that characterization should not apply, and thus the endangerment standard rather than the best interests standard should be used. The law is clear that great weight is given to the parties on denomination of custody when that label is the product of the parties' stipulation. *See Geiger v. Geiger*, 470 N.W.2d 704, 707 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 1, 1991). The facts here support exactly what the parties called it, joint custody. In terms of actual days spent with each parent, including all vacations, all holidays, and all weekend visitation, respondent's time with the children is a full five months of a year. The majority says that appellant's motion did not seek to "modify" the existing custody arrangement because it did not seek to change an arrangement of "true joint custody." I suggest the custody arrangement pursuant to the label given it by the parties, pursuant to the label given it by the trial court in 1984 and 1988, and pursuant to the actual facts was true joint legal and physical custody.

The trial court viewed the situation as joint custody and utilized the best interests of the children standard. The trial court applied the factors of Minn.Stat. § 518.17, subd. 1 (1990), addressed each statutory factor in great detail, and made extensive findings. There is no evidence the court erred by making findings unsupported by the evidence. The trial court's decision to deny the move out of state, to place primary physical custody with respondent, and redesign a visitation schedule taking into account appellant's new home was not an abuse of discretion.

I would have affirmed the trial court's decision in its entirety.